UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

SHAUN GAINES; JAMES MORRISON;
KEVIN EGGLESTON; NOELLE WADE;
and SAMUEL CASTNER,

                Plaintiffs,

vs.

CITY OF EUGENE,

                Defendant.

_____

Case No. 6:23-cv-01538-MK

**FINDINGS AND
RECOMMENDATION**

**KASUBHAI,** United States Magistrate Judge:

      Plaintiffs Shaun Gaines, James Morrison, Kevin Eggleston, Noelle Wade and Samuel

Castner (collectively, "Plaintiffs") bring this action challenging the manner in which Defendant

City of Eugene applies its Park and Open Space Rules ("Park Rules"), specifically how it issues

Notices of Restriction of Use that temporarily prohibit Plaintiffs from using Defendant's parks,

open spaces, or facilities. Plaintiffs bring claims under the First and Fourteenth Amendments to

the United States Constitution; the Americans with Disabilities Act, 42 U.S.C. § 12132; Section

504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Article I, § 20, of the Oregon

Constitution. Before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction. ECF

No. 7. For the reasons below, Defendant's Motion should be GRANTED in part and DENIED in

part. Defendant's Motion for Judicial Notice, ECF No. 8 and Plaintiffs' Motion for Judicial

Notice, ECF No. 14, are GRANTED.[1]

## BACKGROUND

For the purposes of this motion to dismiss, the following facts alleged by Plaintiffs are

assumed to be true.

## I.    General Factual Background

This case involves several overlapping provisions of the City of Eugene's Park Rules.

Defendant adopted rules that apply to City-controlled park property and facilities thereon, and to

open space, as defined by Park Rule 1.000. Def.'s Mot for Judicial Notice, Ex. 1 ("Park Rules"),

at 3. The Park Rules describe the hours of operation, set a process for obtaining permits for

private events or use of community gardens, describe permitted and prohibited activities, provide

enforcement mechanisms, and set out a local hearing and appeal process. *Id.* Violation of a Park

Rule is a misdemeanor, punishable by a fine not to exceed $500 or confinement in jail not to

exceed 30 days, or both. Eugene Code 2.1990(2). City police officers are empowered to enforce

the Park Rules. Park Rule 1.005(2), Eugene Code 2.660(2). If they develop probable cause to

believe that an individual has violated a Park Rule and decide to take enforcement action, the

officer may issue a citation into Municipal Court or they may arrest the suspect. Park Rule

1.005(2)(a) and Or. Rev. Stat. § 133.055(1), 133.310(1)(b).

City police officers are also authorized to issue a Notice of Restriction of Use to an

individual who is arrested or cited for engaging in conduct in a park that violates the Park Rules,

the Eugene Code, or state or federal law. Park Rule 1.005(3)(a); Defendant's Motion for Judicial

---

[1] The parties' Motions for Judicial Notice are unopposed. The Court finds that the parties' Motions each seek judicial notice of "matters of public record" properly considered under Fed. R. Evid. 201(b). *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Notice, Ex. 2 (Admin. Order 58-96-17). A Notice of Restriction states an individual is prohibited from future use of City parks, open space, or facilities (as defined by Park Rule 1.000) and their entry therein or thereon will constitute trespassing. Defendant's Motion for Judicial Notice, Ex. 3 (Notice of Restriction of Use Form); Park Rule 1.005(3)(a). The Notice must contain a statement advising of the right to request a hearing and the manner for doing so. Park Rule 1.005(3)(d). Moreover, the Park Rules explicitly prohibit issuance of a Notice of Restriction for "the exclusion of any person lawfully exercising free speech rights or other rights protected by the state or federal constitution[.]" Park Rule 1.005(3)(e).

The Park Rules specify, however, that "a person engaged in such protected activity who also commits acts that are not protected and that violate applicable provisions of law" may be subject to a Notice of Restriction. *Id.* Anyone who receives a Notice of Restriction is first entitled to an informal hearing to contest the Notice. Park Rule 1.074(1). The request for such a hearing must be filed with the Park and Open Space Division Director within 48 hours (exclusive of weekends), and can be communicated in person, over the phone, by email, or by mail. Park Rule 1.074(2). Defendant automatically stays enforcement of a Notice of Restriction once a request for a hearing is filed and while the appeal proceeds.[2] Defendant's Motion for Judicial Notice, Ex. 4 (Admin. Order 58-20-29). After a request for a hearing is filed, an informal hearing must be held within 7 days and a decision issued not more than 5 days after that. Park Rules 1.074(3) and (5).

At the hearing, the Director is to consider testimony from City personnel involved in the incident that resulted in the Notice of Restriction, testimony from the person requesting the

---

[2] Admin Order 58-20-29 was a temporary order. However, the Court takes judicial notice of the fact that Defendant permanently adopted the stay provision on May 1, 2024. Eugene Park Rules 2024 (available at https://www.eugene-or.gov/DocumentCenter/View/54906/2024-Park-Rules?bidId=).

hearing, and testimony from any other witnesses to the incident. Park Rule 1.074(4). The Director may affirm, modify or cancel the Notice of Restriction and must deliver or mail the decision to the person who requested the hearing. Park Rule. 1.074(4) and (5). At this point, enforcement of the Notice of Restriction is still stayed. It will continue to be stayed for at least 14 more days to afford the individual time to appeal the Notice of Restriction to Eugene Municipal Court. Park Rule 1.074(2)(b) and (6). If an appeal is filed, enforcement of the Notice of Restriction remains stayed until a Municipal Judge reviews the matter and issues a decision. Park Rule 1.074(2)(c). The procedure in Municipal Court is more formal and governed by the general laws of the state applicable to justices of the peace and justices' courts. Eugene Code 2.785. Those proceedings are the same as in Circuit Court. Or. Rev. Stat. § 52.020. The standard of review applied is a preponderance of evidence, just as it is for violations. *Cook v. Michael*, 214 Or. 513, 527 (1958), Or. Rev. Stat. § 153.076(2). The Municipal Court may affirm, modify or reverse the Notice of Restriction based upon the parties' arguments and evidence. Park Rule 1.074(6). Once the Municipal Court issues a decision, and if a Notice of Restriction is affirmed or modified, the automatic stay is lifted. Park Rule 1.074(2)(c). An individual subject to a Notice of Restriction can appeal further as a writ of review under Or. Rev. Stat. § 34.010 *et seq.* or directly to circuit court as part of any violation proceeding and then to the Oregon Court of Appeals. *City of Eugene v. Hejazi*, 296 Or. App. 204, 205-07 (2019).

The facts of this case arise during the COVID-19 pandemic. On April 2, 2021, Defendant formalized a pandemic camping policy with Admin. Order 58-21-17. Defendant's Motion for Judicial Notice, Ex. 8. In relevant part, that order described the current status of pandemic camping at Eugene's Washington-Jefferson Park and provided rules for that camp going forward. *Id.* Those rules included a prohibition on the erection of any additional tents after April

2, 2021, a requirement to maintain 12-foot drive aisles between tents, a requirement to keep camps clean and free from garbage and debris, and a prohibition on setting any fires. *Id.* Failure to leave the property at the direction of authorized City personnel for violation of that Administrative Order constituted trespassing. *Id.* Those rules were re-approved several times during the pandemic.

On February 28, 2022, based on the declining COVID-19 case rates and hospitalizations, Oregon's Governor announced that the Oregon Health Authority rules requiring masks in indoor public places would be lifted. Defendant's Motion for Judicial Notice, Ex. 15 (Admin. Order 58-22-16), at 3. By then, Defendant was operating a number of sites where unhoused individuals were permitted to sleep and began offering transportation and assistance in relocating the individuals camping at Washington-Jefferson Park. *Id.* at 2-3. On March 16, 2022, Defendant repealed the prior administrative order that permitted camping in Washington-Jefferson Park and closed the park for rehabilitation. *Id.* at 3. On March 17, 2022, the Oregon Governor terminated the COVID-19 State of Emergency. Defendant's Motion for Judicial Notice, Ex. 16 (Executive Order 2022-03). On June 7, 2023, Defendant reopened the majority of the Park to the public and it remains open, subject to the Park Rules applicable to all City Parks. Defendant's Motion for Judicial Notice, Ex. 17 (Admin. Order 58-23-26). On July 6, 2023, Park Rule 1.010(2) was amended to eliminate "sleeping bags" from the list of open-hour prohibitions. Defendant's Motion for Judicial Notice, Exhibit 18 (Admin Order 58-23-28).

## II.    Factual Allegations Specific to Plaintiffs

Plaintiffs are a group of Eugene residents who are either currently unhoused, or who were recently unhoused and have alleged facts to suggest that their housing is only temporary.

Plaintiffs allege receiving Notices of Restriction for violations of Eugene's Park Rules that were enforced against them because of their unhoused status.

For example, Plaintiff Noelle Wade alleges she was residing in Washington-Jefferson Park in May 2021. Compl., ¶ 44. An officer cited Ms. Wade for violating Park Rule 1.003 ("Hours Parks and Open Space Areas are Closed") and issued a Notice of Restriction for "[i]n park after hours, camping, dog off leash, trash." *Id*. The Notice of Restriction specified that it applied for 30 days. *Id.* Ms. Wade continues to experience homelessness and to live in and frequent City's parks and open spaces. Compl., ¶ 45.

Plaintiff Kevin Eggleston began residing in Washington-Jefferson Park in December 2020. Complaint, ¶ 36. When Defendant established rules sanctioning the camp in Washington-Jefferson Park, Mr. Eggleston believed he would have difficulty complying with the rules and so, in late August 2021, he asked for more time to comply. Compl., ¶ 38. A month later, on September 29, 2021, police officers told Mr. Eggleston that he had failed to comply with park rules and that he had to leave. Compl., ¶ 39. Two service providers who happened to be in the vicinity explained to the police and parks staff that Mr. Eggleston had disabilities and needed accommodation, but the requests were allegedly ignored. *Id*. Mr. Eggleston was cited with a misdemeanor for violating Park Rule 1.003 ("Hours Parks and Open Space Areas are Closed"). He also received a Notice of Restriction for Park Rule 1.003, ("Park Hours"); Park Rule 1.010(2) ("Erecting a Structure); Park Rule 1.070 ("Littering); Park Rule 1.050 ("Off-leash Dogs"); and Park Rule 1.025 ("Fires and Fireworks)." The Notice of Restriction applied for 30 days. Compl., ¶ 40. Mr. Eggleston contested the 30-day Notice of Restriction, which was stayed pending the appeal. Compl., ¶ 41. On Friday, November 5, 2021, the Eugene Municipal Court entered an order upholding the 30-day restriction. Compl., ¶ 41. The following day an officer criminally

trespassed Mr. Eggleston for being in the park during the term of the renewed 30-day restriction and issued a new Notice of Restriction for 90 days. Compl., ¶ 41. Mr. Eggleston was issued additional citations and convicted of being in the park after hours. Compl., ¶¶ 41, 42. Mr. Eggleston currently lives in a triplex through a Veterans Affairs voucher, but that arrangement has been in jeopardy. Compl., ¶ 43.

On August 27, 2021, Plaintiff James Morrison was residing in a small encampment at Skinner Butte Park. Compl., ¶ 27. There is no allegation this was a park approved for camping. An officer told Mr. Morrison that his campsite violated the rules and that he had to leave immediately. Compl., ¶ 27-28. Plaintiff Morrison informed the officer that he had a physical disability and needed more time to complete the clean-up. Compl., ¶ 28. The officer refused, provided him 10 minutes to vacate, and then cited Mr. Morrison for violating Park Rule 1.010(22), which prohibits possessing more than four bicycle parts. *Id.* The officer also issued a Notice of Restriction based on alleged violations of Park Rule 1.010(2), ("Erecting a structure"); Park Rule 1.003 ("Park Hours"); Park Rule 1.010(22) ("Possession of more than four bicycle parts"); and Park Rule 1.070 ("Littering"). *Id.* Mr. Morrison's Notice of Restriction lasted 30 days. *Id.* At the time of filing the Complaint, Plaintiff Morrison was living in Defendant's only public shelter, the Navigation Center. Compl., ¶ 32. The Navigation Center only provides temporary housing and Plaintiff Morrison alleges not knowing how long he will be able to stay there. *Id.*

Plaintiff Samuel Castner alleges that he was living in Washington-Jefferson Park in 2021. Compl., ¶ 46. In November 2021 his tent was in disrepair and he acquired a new tent. *Id.* He erected that new tent and was later contacted by officers on November 15, 2021. Compl., ¶ 47. An officer issued him a citation for violating Park Rule 1.003 ("Park Hours"). Compl., ¶ 48.

Another officer issued him a Notice of Restriction for violating Park Rule 1.010(2), ("Erecting a structure"), and Park Rule 1.003 ("Park Hours"). *Id.* The Park Use Restriction lasted 30 days. *Id.* There is no allegation Mr. Castner sought the appeal hearing for the Notice of Restriction that was available to him per Park Rule 1.074. At the time of filing the Complaint, Plaintiff Castner had temporary housing through January 2024 in a residential program. Compl., ¶ 50. However, he alleges that he will have no place to go when he leaves the residential program and that he has no means to pay for housing. *Id.*

Plaintiff Shaun Gaines set up a tent in Washington-Jefferson Park in December 2021. Compl., ¶ 17. On January 13, 2022, officers contacted Mr. Gaines and told him that he was not allowed to camp at the Park because of the date when he had arrived. Compl., ¶ 18. One officer issued a citation under Park Rule 1.003, for being in the park after hours. Compl., ¶ 19. Another officer issued a Notice of Restriction for violating Park Rules 1.003 and 1.010(2) for "CAMPING" and "HOURS." *Id.* The Notice of Restriction lasted 30 days. *Id.* Mr. Gaines is currently living temporarily at a family rental home; when he leaves that temporary housing arrangement, he has nowhere to go and alleges he would return to living on the street. Compl., ¶ 22.

Plaintiffs filed this lawsuit on October 20, 2023, alleging that Defendant's application of its Notice of Restriction regime under its Park Rules violated their rights under the state and federal constitutions, the ADA, and the Rehabilitation Act. Compl. ¶ 92-176. On January 12, 2024, Defendant filed a motion to dismiss for lack of standing and failure to state a claim. Mot. to Dismiss. On April 2, 2024, the Court heard Oral Argument on Defendants' Motion.

## III.    Claims

Plaintiffs bring the following claims:

Claim (1): a Vagueness challenge to Defendant's ordinances and rules under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution;

Claim (2): a Procedural Due Process and Notice challenge to Defendant's issuance of Notices of Restriction under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution;

Claim (3): a Substantive Due Process challenge to Defendant's Park and Open Space exclusions and related criminal trespass citations under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution;

Claim (4): a Privileges and Immunities, Equal Protection, and Vagueness challenge to Defendant's treatment of individuals experiencing homelessness under Article I, section 20 of the Oregon Constitution;

Claim (5): an Overbreadth, and Freedoms of Speech and Association challenge to Defendant's exclusion of Plaintiffs from parks, open spaces, and city facilities under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution;

Claims (6) and (7): discrimination claims based on Defendant's alleged failure to make reasonable accommodations under the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* and the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 brought by Plaintiffs Morrison and Eggleston.

### STANDARD OF REVIEW

I.    **Motion to Dismiss for Lack of Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Advanced Integrative Med. Sci. Institute, PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Edison v. U.S.*, 822 F.3d 510, 517 (9th Cir. 2016). A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* On a facial attack, the Court must assume the truth of factual allegations. *Fed. Bureau of Investigation v. Fikre*, 144 S. Ct. 771, 775 n.1 (2024) (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)).

In contrast, in a factual attack on the plaintiffs' assertion of jurisdiction, the moving party "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016); *see also Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). Thus, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

A challenge to standing is appropriately raised under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)") (emphasis omitted); *Chandler v. State Farm Mut. Auto. Ins.,* 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.").

## II.    Motion to Dismiss for Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins.,* 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.*

## III.    Leave to Amend – Fed. R. Civ. P. 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should

freely give leave [to amend a pleading] when justice so requires." A district court should apply

Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200

F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). "[T]he purpose of the rule is 'to

facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United*

*States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d

1143, 1152 (9th Cir. 2011)). A district court may, within its discretion, deny a motion to amend

"due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, [and] futility of the amendment." *Zucco Partners, LLC v.*

*Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger,*

*Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

/ / /

/ / /

/ / /

/ / /

**DISCUSSION**

Defendant moves to dismiss Plaintiff's Complaint for lack of Article III standing,

mootness, and failure to state a claim. Mot. Dismiss. 19.

I.     **Motion to Dismiss for Lack of Standing**

A.     **Injury-In-Fact**

Defendant moves to dismiss Plaintiffs' Complaint for lack of standing, arguing

that Plaintiffs' alleged future harms are not sufficiently actual or imminent to serve as an injury-

in-fact under Article III.

"Standing is a core component of the Article III case or controversy requirement."

*Barnum Timber Co. v. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011). The "irreducible constitutional

minimum of standing" requires that the plaintiff has (1) suffered an injury in fact; (2) that is

fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed

by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish an injury in fact, a plaintiff must

show that they "suffered an invasion of a legally protected interest that is concrete and

particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339

(internal quotation and citation omitted). For an injury to be redressable, "it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*,

504 U.S. at 561. When "standing is challenged on the basis of the pleadings," courts must

"accept as true all material allegations of the complaint" and "construe the complaint in favor of

the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (simplified). At this

stage, "general factual allegations of injury resulting from the defendant's conduct may suffice,

for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (simplified).

To establish an "actual or imminent" injury, Plaintiffs must show a "credible threat that a probabilistic harm will materialize." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (quoting *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013)). The goal of this requirement is "to ensure that the concept of 'actual or imminent' harm is not stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* (simplified). "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation and internal quotation marks omitted).

The Ninth Circuit's test requires a "credible threat" of a "probabilistic harm," even when that harm is not certain to occur. In *California Restaurant Association*, for example, the Ninth Circuit held plaintiffs "easily established standing" by alleging they would open or relocate a restaurant in a new building in Berkeley but for the city's ban on natural gas. 89 F.4th at 1100. Likewise, in *Natural Resources Defense Council*, the imminence prong was satisfied when the Environmental Protection Agency's conditional registration of two pesticides would "increase[ ] the odds of exposure" for the plaintiffs' children. 735 F.3d at 878.

The Ninth Circuit has clarified the scope of the imminence requirement in the homelessness context. In *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019), the Ninth Circuit found plaintiffs who "face a credible risk of prosecution" under Boise's outdoor camping

ordinances had standing under Article III. Each of the six homeless plaintiffs in *Martin* had been

cited under Boise's outdoor camping ordinances within two years of filing the complaint. *Id.* at

603. One plaintiff in *Martin* had not lived in Boise for five years, but the Ninth Circuit found he

nevertheless had standing to challenge Boise's camping ordinances because he was still

homeless and visited Boise "several times a year to visit his minor son," raising a "credible risk

of prosecution under the ordinances in the future." *Id.* at 610.

        1.    <u>Section 1983 Claims</u>

       Here, Defendants assert Plaintiffs lack standing because their injury is not sufficiently

imminent to amount to a live "case or controversy." The Court disagrees. Plaintiffs have alleged

a credible threat of receiving Notices of Restriction to satisfy Article III standing at the pleadings

stage on their § 1983 claims. As the Ninth Circuit has repeatedly made clear, a complaint need

only allege a credible risk that the defendant's actions will cause the alleged harm. *Id.* Plaintiffs

substantiate their allegations of a future risk of harm in two ways: by showing they have suffered

from past enforcement of Eugene's Park Rules and that they will be enforced against Plaintiffs in

the future. Plaintiffs Gaines, Eggleston, and Castner received restrictions between November

2021 and January 2022, within two years of the October 2023 filing. Compl. ¶¶ 18-19, 41, 47-48.

Plaintiff Wade received a Notice of Restriction in May, 2021 for violating Park Rules, and a

criminal trespass citation in October 2023. Compl. ¶¶ 44-45. Plaintiff Morrison was cited under

Eugene Park Rules in October, 2019 and has been told to move his campsite off public premises

by Eugene Police "on approximately eight or nine other occasions." Compl. ¶¶ 24, 30. These

Plaintiffs also allege that they are either currently homeless or are likely to return to being

homeless. *See, e.g.,* Compl. ¶ 45 (Plaintiff Wade: "continues to experience homelessness"); ¶50

(Plaintiff Castner, homeless after January 2024). Plaintiff Wade alleges that she "live[s] in . . .

city parks and open spaces," and "has nowhere that she can go to avoid citation." Compl. ¶ 45.

Plaintiffs allege they are, or will soon be, unhoused. When homeless, Plaintiffs allege they are

forced to live in Eugene parks and open spaces because they have nowhere else to go and that

this subjects them to unavoidable violations of the Park Rules. Plaintiffs credibly allege a risk

that Eugene will enforce its Park Rules (resulting in Notices of Restriction) against them.

Plaintiffs allege at least as credible a risk of harm as the *Martin* Plaintiffs sufficient to satisfy the

Article III standing requirement at the pleading stage.

Defendant relies heavily on the Supreme Court's decision in *City of Los Angeles v.*

*Lyons*, 461 U.S. 95 (1983), but *Lyons* cuts against Defendant rather than for it. In *Lyons,* the

plaintiff sought an injunction prohibiting police from using chokeholds. 461 U.S. at 105.

Although the plaintiff's claim arose out of the police officer's wrongful use of a chokehold, the

risk of future injury was too speculative. The Supreme Court found the plaintiff lacked standing

to seek prospective injunctive relief unless he could show "that all police officers in Los Angeles

always choke any citizen with whom they happen to have an encounter, . . . or, (2) that the City

ordered or authorized police officers to act in such manner." *Id.* at 106. In contrast, these

Plaintiffs have standing because Eugene explicitly authorizes police officers to act in the manner

Plaintiffs allege is unconstitutional. As Plaintiffs allege, Eugene's administrative rules codify the

broad power to issue notices of exclusion that bar individuals from all city parks, open spaces,

and facilities for indeterminate periods of time for even minor infractions. Compl. ¶ 54. Nothing

in the Eugene Code or administrative rules limits the geographic area from which a person may

be banned, the duration, or the circumstances under which a ban would be appropriate. *Id.* ¶¶ 77-

78, 81-84, 87-88. Eugene Police Department (EPD) procedures allows officers discretion in

issuing restrictions. *Id.* ¶¶ 84, 88. And unlike the *Lyons* plaintiff, these Plaintiffs have alleged

how they will personally be "realistically threatened by police officers who acted within the

strictures of the City's policy." *Lyons*, 461 U.S. at 106. Following *Lyons*, then, the Court should find Plaintiffs have alleged sufficient facts to satisfy Article III's injury-in-fact requirement.

2.    ADA and Rehabilitation Act Claims

Plaintiffs Morrison and Eggleston have not alleged sufficient facts to show they are likely to suffer future harm under the ADA or Rehabilitation Act, however, so the Court lacks jurisdiction to consider these claims for prospective relief. Standing is evaluated on a claim-by-claim basis. "A plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each form of relief sought.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Plaintiffs Morrison and Eggleston allege two discrete incidents, both over two years removed from the Complaint, when they allege their rights under the ADA and Rehabilitation Act were violated. Compl. ¶¶ 28, 38. They do not allege facts that show this failure-to-accommodate has happened since, or that they are otherwise likely to suffer the same statutory harm again. They have plausibly alleged a credible threat of probabilistic harm to their First or Fourteenth Amendment rights based on their housing status and past enforcement of Eugene's Notice of Restriction regime. *See supra*. But no similar policy or past practice establishes a likelihood Defendant will violate their ADA or Rehabilitation Act rights. Without more, the Court should find Plaintiffs Morrison and Eggleston lack standing to bring these claims.

**B.    Mootness**

Defendant further argues this Court lacks jurisdiction because the facts have changed significantly on the ground and Plaintiffs' claims are now moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)). But voluntary cessation can yield mootness only if a "stringent" standard is met: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. The party asserting mootness bears a "heavy burden" in meeting this standard. *Id.*

The Court presumes that a government entity is acting in good faith when it changes its policy, *see Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010), but when the government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to resume. *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir. 2000). "[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision." *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir. 1991). "Repeal or amendment of an ordinance by a local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice" at issue. *City of Boise*, 709 F.3d at 899 (internal quotation marks omitted). "Dismissal on mootness grounds is 'justified only if it [is] absolutely clear that the litigant no longer ha[s] any need of the judicial protection that it

sought.'" *Pizzuto v. Tewalt*, 997 F.3d 893, 903 (9th Cir. 2021) (quoting *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008)).

Defendant argues this case is moot for three reasons, none of which moots Plaintiffs' claims. Defendant first argues that the COVID-19 era camping regulations specific to Eugene's Washington-Jefferson Park (where most alleged notices of restriction were issued) have been rescinded, so the threat of enforcement has dissipated. Mot. to Dismiss at 26-27. However, the temporary, pandemic-era rules that applied to Washington-Jefferson Park have nothing to do with the Park rules Plaintiffs challenge. Park Rules 1.005 and 1.074 and EC 4.807 are still in effect. *See* Compl. ¶¶ 164, 174, 176. And as Defendant acknowledges, Notices of Restriction are a tool that continues to exist. Mot to Dismiss at 27.

Defendant's contention that this case is similar to other pandemic-era cases where changed conditions mooted a plaintiff's claims is not persuasive. Defendant points to *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1081 (D. Or. 2021), where the Court found the plaintiff's claims moot because of a decrease in protests and changes in Oregon law. Def.'s Reply at 6, ECF No. 18. In *Wolfe*, changes in state law had "match[ed] and exceed[ed] the [changes plaintiffs sought]." *Wolfe v. City of Portland*, Case No. 22-35530, 2023 WL 5608993, at *1 (9th Cir. Aug. 30, 2023). In contrast, here, Eugene's policies plaintiffs challenge are still in effect. In upholding the District Court's mootness ruling, the Ninth Circuit also noted there had been a "precipitous decrease in violent protests in Portland." *Id.* Defendant has identified no such evaporation of the homeless crisis in Eugene, and certainly not one established at the pleadings stage. *Wolfe* is not persuasive, and if anything, clarifies why Plaintiffs' claim remains live. The Court should not dismiss the case on mootness grounds because of changed conditions in Washington-Jefferson Park.

Second, changes in state law do not render Plaintiffs' claims moot. Plaintiffs challenge the application of Notices of Restriction under Eugene Code and EPD Procedures. *See* Compl. ¶¶ 164, 174. Defendants identify two new state laws—Or. Rev. Stat. §§ 195.505 and 195.530—that purportedly moot Plaintiffs' case, but neither prohibits Defendant from issuing notices of restriction or alters the process Defendant implements to enforce the Notices. One statute, Or. Rev. Stat. § 195.505, heightens the notice requirement before law enforcement can remove individuals from established camping sites. Or. Rev. Stat. § 195.530 requires city regulations around sitting, lying, sleeping, and staying warm and dry to be objectively reasonable. In response to that law, Defendant amended its prohibited camping law, EC 4.815, which is likewise not at issue in this case. Because neither of the changes in state law affect the allegations Plaintiffs make here, they do not moot this case.

Finally, Defendant argues that changes in its policies automatically staying enforcement of a Notice of Restriction during the appeal process moots Plaintiffs' request for prospective relief. The Complaint addresses this change, alleging that the text of the formal notices issued, as well as police customs and practices, still violate their constitutional rights under the First and Fourteenth Amendments. *See*, *e.g.*, Compl. ¶¶ 19, 28, 40, 44, 48, 101. Defendant's newly-adopted stay provision affects the merits of Plaintiffs' claims, but does not moot this case entirely. For example, Plaintiffs challenge the vagueness of the Notices of Restriction themselves, the sufficiency of the remainder of the process (notwithstanding a stay) that Defendant provides pending a Notice of Restriction, and the impact on their associational rights under the First Amendment and the Oregon Constitution. Eugene's policy change does not moot the broad sweep of these claims, and the Court should deny Defendant's motion to dismiss for lack of jurisdiction on this basis.

II.     **Motion to Dismiss for Failure to State a Claim**

A.      **Vagueness**[3]

Defendant moves to dismiss Plaintiffs' facial claim that Park Rules 1.005 (enforcement) and 1.074 (appeals) are void for vagueness. Complaint, ¶¶ 92-99, 176. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, (1983). "[T]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). To defeat a facial vagueness challenge, the rule at issue must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)). Plaintiffs challenge Eugene's Park Rules because they do not define the length or geographic scope of an

/ / /

---

3 Plaintiffs' Complaint does not specify which Park Rules or city Code provisions are void for vagueness. See Compl. ¶¶ 92-99. Instead, the Complaint refers to "Defendant's ordinances and rules" as a whole. *Id.* ¶ 94. This is reason alone to grant the motion to dismiss Plaintiffs' vagueness claim (for vagueness) because it does not allege which legal provisions either fail to give adequate notice or invite arbitrary enforcement. The Court nevertheless proceeds to consider the merits of Plaintiffs' vagueness claim as they define it in their response brief - a facial challenge to Rules 1.005 (enforcement) and 1.074 (appeals), and how EC 4.807 (trespass II) is applied under those Rules and in conjunction with the notice of restriction of use. Pls.' Resp. at 24. Plaintiffs do not claim that EC 4.807 is independently void for vagueness in their Complaint or brief, so the Court does not analyze that statute here.

exclusion issued under the Rules, and because the Rules are allegedly so vague as to permit arbitrary or discriminatory enforcement. Pls.' Resp. at 25, ECF No. 13; Compl. ¶ 92-97.

First, the Park Rules are not void for vagueness because they provide adequate notice of the scope of an exclusion. To test whether a law gives adequate notice, the Court looks at the "very words" of the statute in question to determine whether the statutory language is "sufficiently precise to provide comprehensible notice" of the prohibited conduct. *United States v. Vasarajs*, 908 F.2d 443, 448 (9th Cir. 1990). The ordinary person must understand what conduct is prohibited; he must not be "left guessing about what is prohibited and what is not." *Free Speech Coalition v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999). Plaintiffs argue the Park Rules are vague because they do not give notice of "where they might be excluded from or for how long that exclusion might last." Pls.' Resp. at 25. But the words of the Park Rules and accompanying Notices of Restriction do just that. Concerning how long an exclusion will last, the Park Rules Provide that "[t]he notice shall state the specific time period to which the prohibition on future use applies." Park Rule 1.005(3)(c). The Notice of Restriction form itself includes a line detailing that "[t]his restriction of use is effective beginning on _____, and shall remain in effect until_____." Notice of Restriction of Use Form at 1. Nothing about the words of the statute or the accompanying form would leave a person of ordinary intelligence to guess at the duration of the restriction. Likewise, the Notices define their geographic scope. The Notice of Restriction form alerts recipients that they are banned from "any City of Eugene park, open space or facility," which is defined as "all park property and facilities thereon belonging to the City of Eugene, including park property and facilities outside the corporate limits of the City and County parks within the corporate limits of the city, except park property and facilities for which other specific rules or regulations have been adopted." Park Rule 1.000. These rules

provide accurate, comprehensible notice of the geographic and temporal scope, and are not void for vagueness on this basis.

Nor are Park Rules 1.005 and 1.074 void for vagueness because they allow for arbitrary or discriminatory enforcement. As an initial matter, Plaintiffs' claim fails because under Ninth Circuit law they cannot bring a facial challenge arguing arbitrary enforcement when their conduct clearly falls within the statute's prohibitions. *United States v. Melgar-Diaz*, 2 F.4th 1263, 1270 (9th Cir. 2021) ("Defendants cannot claim that an impermissibly vague statute has resulted in arbitrary enforcement when their conduct falls within the provision's prohibited conduct.") (internal quotation marks omitted). The Ninth Circuit also noted that "an as-applied arbitrary enforcement challenge fails if 'the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute[.]'" *Id.* (quoting *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (Sotomayor, J.)). The Notices of Restriction Plaintiffs challenge can only be issued for violation of the Park Rules in the presence of authorized City personnel or law enforcement. Park Rule 1.005. Plaintiffs do not allege that the Notices of Restrictions were issued for conduct that was not proscribed. For example, Plaintiff Wade alleges that an officer issued her an exclusion for allegedly having a dog off leash but she does not allege that the dog was, in fact, on leash. Compl. ¶ 44. As a result, Plaintiffs' arbitrary enforcement vagueness challenge is barred under Ninth Circuit law. *See Kashem v. Barr*, 941 F.3d 358, 376 (9th Cir. 2019) ("In sum, we are not persuaded by plaintiffs' contention that we may cast aside the longstanding rule that a litigant whose conduct is clearly

prohibited by a statute cannot be the one to make a facial vagueness challenge."[4] The Court should grant Defendant's motion to dismiss Plaintiffs' void for vagueness claim.

### B.    Due Process

In determining whether procedures adequate to satisfy due process were accorded plaintiffs, courts use the so-called *Mathews* balancing test in which the cost of requiring a particular set of procedures is weighed against the benefits from the use of those procedures. *See City of Los Angeles v. David*, 538 U.S. 715 (2003). On one side of the equation are: (1) the strength of the private interest that would be affected by the official action and (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). On the other side is "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* (quoting *Mathews*, 424 U.S. at 335). The Ninth Circuit has adopted and applied the *Mathews* balancing test in procedural due process cases. *Grimm v. City of Portland*, 971 F.3d 1060, 1063 (9th Cir. 2020). By balancing these concerns, the court can determine whether the government has met the "fundamental requirement of due process," which is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333). The parties do not dispute that Defendant has a strong interest in

/ / /

---

[4] On the merits, Plaintiffs' arbitrary enforcement challenge also fails because the challenged Rules give law enforcement sufficient direction about when Notices of Restriction can be issued. Unlike the vagrancy laws at issue in cases like *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 (1972), where the City of Jacksonville criminalized nebulous behaviors like "loitering," "prowling," and "nightwalking," Eugene's Rules specifically define a set of park rules that, if violated, can be punished by issuance of a Notice of Restriction of Use. Park Rule 1.005(1)(a)(3). The park rules are clear, and not subject to arbitrary enforcement. *See, e.g.,* Park Rule 1.003 Hours Parks and Open Space Areas are Closed (describing hours of park closures between "11:00 p.m. of one day and 6:00 a.m. of the succeeding day").

enforcing its park rules, but disagree about the first two prongs of the *Mathews* test: the significance of Plaintiffs' protected interest and the risk of erroneous deprivation.

Where a protected interest is at stake, the Court applies the *Mathews* three-part test to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation." *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (quoting *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015)). Usually, "the Constitution requires *some kind of . . . hearing* before the State deprives a person of liberty or property." *Id.* (emphasis in original). In "situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation . . . remedy to compensate for the taking." *Shinault*, 782 F.3d at 1058. The predeprivation hearing, which "need not be elaborate[,] . . . serves only as an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action." *Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 985 (9th Cir. 1998) (internal quotation marks omitted). "To that end, a [due process] plaintiff need only be accorded oral or written notice of the charges against him, an explanation of the [adverse] evidence, and an opportunity to present his side of the story." *Id.* (internal quotation marks omitted). Further, where "prompt postdeprivation review is available for correction of administrative error, [due process] generally require[s] no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Mackey v. Montrym*, 443 U.S. 1, 13, (1979).

/ / /

Here, the analysis begins under *Mathews* by defining the "private interest" at stake. Defendants argue Plaintiffs have no liberty interest in being "present in the park outside times the park property was open and accused of violating various other park rules." Mot. to Dismiss at 35. But Defendants mischaracterize the private interest at issue. The *Mathews* test does not ask about the strength of the private interest that *led to* the official action, but the interest that would be "affected by the official action." *Mathews*, 424 U.S. at 335; *cf Grimm*, 971 F.3d at 1063 (noting the liberty interest as "the uninterrupted use of one's vehicle" as "a significant and substantial private interest," not the interest in, for example, parking illegally). Here, Plaintiffs allege the Notices of Restriction cause them to lose access to Eugene's parks, open spaces, or facilities, which not only restricts their ability to "engag[e] in community life" Compl. ¶ 118, but also "mak[es]their presence a crime . . . effectively prevent[ing] plaintiffs from legally residing in the city." Compl. ¶ 120. This interest is particularly strong for Plaintiffs because they allege they have "no other place to be," so would be barred from the places where they eat, sleep, and have access to the restroom. *See, e.g.,* Compl. ¶ 50. In short, Plaintiffs allege a strong liberty interest threatened by Defendant's use of Notices of Restriction.

Under the second *Mathews* factor, the risk of erroneously depriving Plaintiffs of their liberty interest in use of Eugene's public spaces is minute. The Ninth Circuit has held municipal processes similar to Defendant's procedure for reviewing Notices of Restriction provide individuals with sufficient process. *See, e.g.*, *Yagman*, 852 F.3d at 863 (holding Los Angeles' predeprivation hearing and postdeprivation judicial review process to contest parking citations "does not violate procedural due process"). Here, Plaintiffs enjoy significant predeprivation procedures to protect their rights similar to what the plaintiff had in *Yagman*. After receiving a Notice of Restriction, Plaintiffs may request an informal hearing to contest it within 48 hours by

petitioning in-person, mailing, emailing, or calling city officials using the contact information included on the Notice.[5] Park Rule 1.074(1-2). This request stays enforcement of the Notice of Restriction, after which Plaintiffs are given a hearing within 7 days (where they would hear testimony from Eugene personnel involved in the incident and be able to present their own testimony or testimony from other witnesses) and a decision 5 days after that. Park Rule 1.074(3), 1.074(5). Even if the restriction is upheld by the Director, the stay of the Notice of Restriction continues for at least 14 more days to afford time to appeal to Eugene Municipal Court. Park Rule 1.074(2)(b). If such an appeal is filed, the Notice of Restriction remains stayed until a Municipal Court Judge reviews the matter and issues a decision. Park Rule 1.074(2)(c). In all, the Eugene Code provides Plaintiffs the opportunity for both an administrative hearing and judicial review before the Notices of Restriction become effective. This gives Plaintiffs significant protection against erroneous deprivation of their rights, and they identify no "additional procedural safeguards" Defendant ought to provide that would be more protective than what the Code gives them already.

Given the significant interest Defendant has in enforcing its park rules and the significant protections against erroneous deprivation of Plaintiffs' rights, this Court concludes that the Notice of Restriction regime does not violate procedural due process. Under these circumstances, the initial review serves as an adequate "initial check against mistaken decisions." *Brewster*, 149 F.3d at 985. Defendant's process provides ample opportunity for review and correction of erroneous Notices, and the initial review by the Director "provide[s] a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental

---

[5] Plaintiffs argue the location they must file an appeal is a "physical address that is difficult to access." Pls.' Resp. at 23. The Court takes judicial notice of the fact that 1820 Roosevelt Boulevard is in downtown Eugene. Assuming that downtown Eugene is difficult to access, Plaintiffs may nevertheless file an appeal by mail, e-mail, or telephone. *See* Park Rule 1.74(2).

official warrants them to be." *Mackey*, 443 U.S. at 13. Thus, Plaintiffs fail to state a claim for violation of procedural due process.

Plaintiffs cite two cases from this District, which they believe persuasively show they have stated a claim for a violation of their due process rights. Pls.' Resp. at 27-28 (citing *Blake v. City of Grants Pass*, No. 1:18-CV-01823-CL, 2020 WL 4209227, at *13 (D. Or. July 22, 2020; *Yeakle v. City of Portland*, 322 F. Supp. 2d 1119, 1129-31 (D. Or. 2004)). Both cases dealt with park bans, but both show how Eugene's Notice of Restriction regime accords with, rather than violates the Due Process Clause. In *Yeakle* for example, the Court highlighted deficient appeals, lack of a pre-deprivation hearing, and the standardless basis for any park official or employee, employee of any nonprofit corporation with which Defendant has a park management agreement, or police officer to issue an exclusion to Portland parks. *Yeakle*, 322 F. Supp. 2d at 1130. Grants Pass applied a similarly standardless regime with no predeprivation process. *City of Grants Pass*, 2020 WL 4209227, at *13. Here, by contrast, Eugene offers significant pre-deprivation process, Municipal Court appellate review applying a preponderance of the evidence standard, and an evidentiary standard police officers must follow before issuing a Notice. Park Rules 1.005(3)(a), 1.74, Eugene Code 2.785, Or. Rev. Stat. § 52.020. Eugene's Notice of Restriction regime is far more protective of Plaintiffs' due process rights than the schemes in *Yeakle* or *Grants Pass*, and these cases are not otherwise persuasive. Plaintiffs procedural due process claim should be dismissed.

### C.    Substantive Due Process

The "substantive" aspect of the due process clause of the Fourteenth Amendment forbids the government from depriving a person of life, liberty, or property when the government acts with deliberate indifference or reckless disregard for that person's fundamental rights. *Tennison*

*v. City & County of S.F.*, 570 F.3d 1078, 1089 (9th Cir. 2009); *Porter v. Osborn*, 546 F.3d 1131, 1137-39 (9th Cir. 2008). A plaintiff establishes a substantive due process violation by showing the defendant deprived him of his life, liberty, or property and engaged in "conscience shocking behavior" in doing so. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). An official's conduct may shock the conscience where the official acts with deliberate indifference or reckless disregard for the plaintiff's rights in situations where the official had the opportunity to deliberate. *Tennison*, 570 F.3d at 1089; *Porter*, 546 F.3d at 1137-39.

Plaintiffs argue they have a protected liberty interest in being "physically present in public spaces for innocent purposes." Pls.' Resp. at 30. Plaintiffs cite *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999), where the Supreme Court identified that "it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's Commentaries." (internal citations, quotation marks, and footnote removed). Defendant counters that other Amendments are a better harbor for Plaintiffs' substantive due process arguments, and that Plaintiffs have failed to allege a specific enough harm (largely repurposing its unsuccessful standing arguments, addressed above). Def.'s Reply at 13-14.

Assuming Plaintiffs identified a liberty interest to remain in City parks or other public spaces that is grounded in the Fourteenth Amendment, they fail to allege a substantive due process violation. To state a substantive due process claim based on Defendant's procedures, Plaintiffs must allege the procedures are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Yagman,* (internal citation omitted). Defendant's procedures, however, are "presumed valid, and this presumption is

overcome only by a clear showing of arbitrariness and irrationality." *Id.* This is an "exceedingly

high burden." *Id.* Defendant offers significant procedures to protect against arbitrary and

unreasonably deprivation of Plaintiffs' rights and Plaintiffs fail to allege any "conscience-

shocking" behavior by Defendant. *Brittain*, 451 F.3d at 991. As addressed above, Defendant's

procedures serve the important governmental interest of enforcing its park rules that protect

safety and cleanliness of the parks. Because Plaintiffs have not alleged conduct so "egregious" as

to "amount to an abuse of power lacking any reasonable justification in the service of a

legitimate governmental objective," *Yagman*, 852 F.3d at 867, they fail to state a substantive due

process claim. Defendant's Motion to Dismiss Plaintiffs' substantive due process claim should

be granted.

        **D.**      **First Amendment Overbreadth[6]**

      Plaintiffs also allege Defendant's Notices of Restriction regime violates their First

Amendment rights because the Notices are overbroad. A facial First Amendment challenge to an

ordinance can be brought against regulation of "spoken words" or where a statute by its terms

regulates the time, place and manner of expressive or communicative conduct. *Broadrick v.*

*Oklahoma*, 413 U.S. 601, 612-13 (1973). If a statute or ordinance has nothing to do at all with

words or expressive conduct, however, a plaintiff cannot maintain a First Amendment claim.

*Virginia v. Hicks*, 539 U.S. 113, 123-24 (2003). In *Hicks*, for example, a political subdivision

issued a "barment notice" to an individual accused of property damage on public property that

prohibited him from returning to that property on penalty of criminal trespass. *Id.* at 116. The

---

[6] Plaintiffs appear to make a facial challenge in their Complaint, but in their response argue they "also allege as-applied claims." Pls.' Resp. at 25, n. 20. In determining whether this case presents a facial or an as-applied federal constitutional challenge, Plaintiffs' characterization of the claim as "as-applied" is beside the point. "The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow . . . reach . . . beyond the particular circumstances of these plaintiffs." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Plaintiff seeks relief that would apply broadly beyond their "particular circumstances," so bring "facial challenges" even if they seek to characterize them as "as-applied."

barred individual sued, arguing the subdivision's exclusionary penalty was overbroad and therefore violated his First Amendment rights. *Id.* at 117. The Supreme Court held that "[n]either the basis for the barment sanction (the prior trespass) nor its purpose (preventing future trespasses) has anything to do with the First Amendment." *Id.* at 123. In *Hicks*, the plaintiff had simply not brought a valid First Amendment claim at all because the statute he challenged had nothing to do with expressive conduct. *Id.*

Plaintiffs' First Amendment claim here fits the same mold: they challenge a penalty (the Notice of Restriction) that is imposed to sanction violation of park rules and prevent more in the future. *See* Compl. ¶¶ 144-53. Plaintiffs ultimately argue the incidental effects of the Notices' burden of their First Amendment rights, but the Supreme Court has made clear that generally applicable laws do not offend the First Amendment simply because their enforcement has incidental effects on First Amendment rights. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). Plaintiffs fail to state a First Amendment overbreadth claim because the statute they challenge does not implicate the First Amendment in the first place. Their overbreadth claim should be denied.[7]

### E.    Statute of Limitations Arguments

Defendant also moves to dismiss Plaintiffs' Wade, Morrison, and Eggleston's Section 1983 claims as time-barred.[8] "The statute of limitations for § 1983 actions parallels state

---

[7] Furthermore, "[t]he overbreadth doctrine is a strong medicine that is used sparingly and only as a last resort." *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988) (quotation marks omitted). To succeed, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). The plaintiff "bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (alteration in original) (quotation omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech . . . ." *Id.* at 124. Plaintiffs fail to make such a showing.
[8] Defendant also moves to dismiss the ADA and Rehabilitation Act claims as untimely. Mot. to Dismiss at 34-36. Because Plaintiffs do not have standing to bring these claims, the Court does not consider their timeliness here.

personal injury tort law." *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) (citing

*Chardon v. Fumero Soto*, 462 U.S. 650 (1983)). Typically, Oregon law has a two-year statute of

limitations period for personal injury actions. Or. Rev. Stat. § 12.110(1). But where, as here, a

plaintiff seeks only prospective equitable relief, Oregon law applies statutes of limitations only

by analogy; the effect of expiration of the period limiting an analogous suit at law is only to shift

to the plaintiff the burden of establishing that his equitable action is not barred by laches. *W. Los

Angeles Inst. for Cancer Research v. Mayer*, 366 F.2d 220 (9th Cir. 1966); *President & Trustees

of Tualatin Acad. & Pac. Univ. v. Keene*, 59 Or. 496, 519, (1911). Plaintiffs' grounds for seeking

equitable relief accrued when they were able to show they were reasonably likely to suffer the

constitutional harms they allege. *Babbitt*, 442 U.S. at 298. For these Plaintiffs, that was typically

when they received their first Notices of Restriction. *See, e.g.*, Compl. ¶s 24-28, 39-40, 97, 142.

Plaintiffs did not harmfully delay, and Defendant does not present any potential prejudice to

suggest laches should apply here. *See Generally* Pls.' Resp., Def.'s Reply. For Plaintiffs' Section

1983 claims seeking equitable relief, then, the Court should find they are not barred by the

applicable state law statute of limitations.

### F.    Article I, Section 20 of the Oregon Constitution

Finally, Plaintiffs bring a claim under Article I, section 20, of the Oregon Constitution

which states: "No law shall be passed granting to any citizen or class of citizens privileges, or

immunities, which, upon the same terms, shall not equally belong to all citizens." To prevail on a

claim for violation of Article I, section 20, a plaintiff must show that (1) he is a member of a

group that is a "true class," (2) that the challenged law grants another group a privilege or

immunity that the plaintiff's group has not been granted, (3) the differential treatment is based on

characteristics the group has that are apart from the statute, and (4) the differential treatment has

no rational basis. *State v. Goacher*, 303 Or. App. 783, 788 (2020). A true class is one that exists independently of the challenged law. Examples of true classes include classes that are based on gender, race, ethnicity, sexual orientation, legitimacy, alienage, residency, military service, and religious affiliation. *Tanner v. Oregon Health Sciences Univ.*, 157 Or. App. 502, 521 (1998). A "true class" is "not defined by any statute nor by the practices that are the subject of plaintiffs' challenges." *Id.* at 520-21. Rather, a true class is defined "in terms of characteristics that are shared apart from the challenged law or action." *Id.* at 523-24.

Plaintiffs convincingly argue that "homeless individuals" is a "true class" under Oregon law, but fail to state a claim because they do not identify another group that receives a privilege or immunity withheld from homeless individuals, and admit that several of them are not currently homeless. When bringing a class-based challenge to a statute under Article I, section 20, the plaintiff's claim "must raise the question of whether [the plaintiff], as a member of the class, is denied a 'privilege' or 'immunity' that is granted to members of similarly situated classes." *Goacher*, 303 Or. App. at 789. That is, the plaintiff "must show that all members of his class are denied a privilege that people outside the class are granted." *Id.*

Here, Plaintiffs identify no such privilege or immunity. They argue that Defendant enforces its Park Rules disproportionately against homeless individuals, but concede that the park rules apply to housed and unhoused alike. *See* Compl. ¶¶ 127-37. Nor do Plaintiffs allege that the entire class—all "homeless individuals"—is equally subject to Notices of Restriction, or that all those with permanent housing are immune. And at a minimum, Plaintiffs concede that Plaintiffs Gaines, Eggleston, and Castner are not currently homeless, so are not part of the class. Pls.' Resp. at 39. Even if the Complaint stated a claim under the Oregon Constitution, those

Plaintiffs' claims would fail because they do not belong to the class. The Court should therefore grant Defendant's motion to dismiss Plaintiffs' Oregon constitutional claim as well.

## III.    Leave to Amend

Plaintiffs do not seek leave to amend in their response, but the Court should dismiss without prejudice regardless. If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Given the Ninth Circuit's permissive standard and because of the possibility that new facts have arisen since the filing of this claim that could affect Plaintiffs' claims, the Court recommends allowing Plaintiff an opportunity to cure the deficiencies by amendment.

## RECOMMENDATION

For the reasons above, Defendant's Motion to Dismiss (ECF No. 7) should be GRANTED in part and DENIED in part. Plaintiff's claims should be DISMISSED with leave to amend. Defendant's Motion for Judicial Notice (ECF No. 8) and Plaintiffs' Motion for Judicial Notice (ECF No. 14) are GRANTED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal under Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment or appealable order. The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within

/ / /

the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951
*F.2d 1153, 1157 (9th Cir. 1991)*.

DATED this 16th day of August 2024.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge